IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MIKE M. WILLOUGHBY,

    Plaintiff,

v.                                                        Civil Action No. 3:16cv784

COMMONWEALTH OF VIRGINIA, et al.,

    Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on two motions to dismiss Plaintiff Mike M. Willoughby's Amended Complaint: (1) Defendants Danny A. Ojibway and J.D. Bernacki's Motion to Dismiss (the "Officers' Motion to Dismiss"), (ECF No. 13); and, (2) Defendant Commonwealth of Virginia's Motion to Dismiss (the "Commonwealth Motion to Dismiss"), (ECF No. 15), (collectively, the "Motions to Dismiss").[1] The Officers' Motion to Dismiss was filed pursuant to Federal Rule of Civil Procedure 12(b)(6),[2] and the Commonwealth Motion to Dismiss was filed pursuant to Federal Rules of Civil Procedure 12(b)(1)[3] and 12(b)(6). Willoughby did not respond to either of the Motions to Dismiss, and the time to do so has expired. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The

---

[1] Both Motions to Dismiss provided Willoughby with appropriate notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). (*See* ECF Nos. 13, 15.)

[2] Rule 12(b)(6) provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[3] "[A] party may assert the following defense[] by motion: (1) lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[4] and 1367.[5] For the reasons that follow, the Court will grant the Officers' Motion to Dismiss and deny as moot the Commonwealth Motion to Dismiss. The Court will dismiss the Amended Complaint.

### I. Standard of Review

#### A. Obligation to Construe *Pro Se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte*, statutory and constitutional claims that the [litigant] failed to clearly raise on the face of [the] complaint." *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

#### B. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*,

---

[4] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Complaint alleges Fourteenth and Fourth Amendment violations pursuant to 42 U.S.C. § 1983.

[5] The Court exercises supplemental jurisdiction over Willoughby's intentional tort claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). 28 U.S.C. § 1367(a).

2

980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

## II. Procedural and Factual Background

### A. Procedural Background

On September 22, 2016, the Commonwealth of Virginia (the "Commonwealth"), Bernacki, Ojibway (collectively, the "Defendants") filed a Joint Notice of Removal, removing Willoughby's Complaint from the Circuit Court of the City Richmond. (ECF No. 1.) All three defendants then filed motions to dismiss. (ECF Nos. 3, 5.) Within twenty-one days after service

3

of those motions, Willoughby filed a Letter Motion for Leave to Amend with an Amended Complaint attached. (*See* ECF Nos. 9, 9-1.) Pursuant to Federal Rule of Civil Procedure 15(a)(1)B),[6] the Court ordered Willoughby to file his Amended Complaint and denied as moot the defendants' motions to dismiss. (*See* October 31, 2016 O. 1–2, ECF No. 11.)

On November 21, 2016, Willoughby filed his Amended Complaint. (ECF No. 12.) Willoughby's Amended Complaint asserts four claims, which are numbered but include no title. Construing the Amended Complaint liberally, as it must, the Court interprets Willoughby's claims as follows:

| | |
|---|---|
| **Count I:** | **Equal Protection Violation** – Ojibway and Bernacki violated Willoughby's "Fourteenth Amendment[7] constitutional rights to be free from racial profiling police harassment," (Am. Compl. 3); |
| **Count II:** | **Intentional Tort** – Ojibway and the Commonwealth "were intentionally negligent when they racially profiled" Willoughby, and Bernacki "was intentionally negligent when he allowed and permitted [Ojibway and the Commonwealth] to racially profile" Willougby, (Am. Compl. 6); |
| **Count III:** | **Fourth Amendment Violation** – Ojibway, the Commonwealth, and Bernacki violated Willoughby's "Fourth Amendment[8] Constitutional rights to be free from unreasonable searches and seizures," (Am. Compl. 10); and, |
| **Count IV:** | **Equal Protection Violation** – Ojibway, Bernacki, and the Commonwealth violated Willoughby's "Fourteenth Amendment Constitutional rights to be free from racial profiling police harassment," (Am. Compl. 13–14). |

---

[6] Rule 15(a)(1)(B) allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f)." Fed. R. Civ. P. 15(a)(1)(B).

[7] The Fourteenth Amendment to the United States Constitution provides in part that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

[8] The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

Willoughby brings Counts I, III, and IV pursuant to 42 U.S.C. § 1983,[9] and brings Count II pursuant to "Virginia intentional tort law for personal injury." (Am. Compl. 4.)

Ojibway and Bernacki moved to dismiss all counts against them. They argue that: (1) Counts I and IV should be dismissed because Willoughby failed to articulate any factual allegations supporting his conclusory allegations of discrimination; (2) Count II should be dismissed because Willoughby alleged no cognizable intentional tort; and, (3) Count III should be dismissed because Willoughby's factual allegations did not amount to an unreasonable search and seizure. In the alternative, Ojibway and Bernacki assert that qualified immunity protects them from liability on Counts I, III, and IV because none of the rights Willoughby seeks to vindicate in those counts were clearly established at the time Bernacki and Ojibway allegedly violated them. Willoughby did not respond to the Officers' Motion to Dismiss.

The Commonwealth moves to dismiss all counts against it. The Commonwealth argues that the Eleventh Amendment[10] and sovereign immunity protects it from suit for damages. The Commonwealth contends in the alternative that the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Willoughby failed to plead facts sufficient to state a claim

---

[9] Section 1983 provides a private right of action for a violation of constitutional rights by persons acting under the color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[10] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

against the Commonwealth for a violation of his constitutional rights or for a violation of Virginia tort law. Willoughby did not respond to the Commonwealth Motion to Dismiss.

### C. Summary of Allegations in the Amended Complaint[11]

The claims in Willoughby's Amended Complaint center around interactions Willoughby had with members of the Henrico County Police Department on two occasions. On May 10, 2016, in "the first case of unwelcomeness [sic] and racial profiling police harassment behaviors," Willoughby alleges that, "Henrico County Police Department alleged marijuana smoking were [sic] occurring [at 185 N. Laburnum Avenue Apt. 2] and the apartment was searched by police with police K9 dogs in assistance." (Am. Compl. 1, 5, 12.) Willoughby asserts that the search uncovered no drugs, and "no charges were filed." (*Id.*) Willoughby contends that Ojibway and the Commonwealth violated the duty of care they owed to him "as a law abiding citizen resident in their county" by "intentionally infringing on the plaintiff [sic] constitutional rights," and that Bernacki "violated that duty by intentionally permitting the infringement on the plaintiff [sic] constitutional rights." (Am. Compl. 5.)

> Willoughby further avers that, on June 30, 2016, at 2:30 a.m.,
>
> [Ojibway and the Commonwealth] illegally seized the plaintiff on his back porch while [Bernacki] illegally seized an underage male roommate, C.P., in the front of the dwelling through an open living room window and hailed questions at us, and were trying to coerce us into admitting our role in an alleged crime and/or were trying to obtain information regarding an alleged event that the defendants believed we witnessed.

(Am. Compl. 9.) During that encounter, "the defendant, Danny A. Ojibway, based solely on the plaintiff [sic] black skin color, fabricated reasons to question the plaintiff about illegal activities."[12] (Am. Compl. 2, 5, 12.)

---

[11] For purposes of a motion to dismiss, the Court will assume the well-pleaded factual allegations in the Amended Complaint to be true and will view them in the light most favorable to Willoughby. *Matkari*, 7 F.3d at 1134.

Willoughby alleges that Ojibway and the Commonwealth "illegally seized [Willoughby] on his back porch," and Bernacki "illegally seized an underage male roommate, C.P., in the front of the dwelling through an open living room window" by "hail[ing] questions" at the two men. (Am. Compl. 9.) Willoughby asserts that the purpose of the questioning was to "coerce" Willoughby and C.P. into admitting their "role in an alleged crime," or to "obtain information regarding an alleged event" the officers believed Willoughby and C.P. had witnessed. (Am. Compl. 9.) The interaction included questions such as, "[W]hy don't you have any light bulb at your back door?"; "[W]ho owns this apartment?"; "[Y]ou smell weed around here?"; "[A]re you a big husler [sic] like your T-Shirt says?"; and, "[D]id you see anyone smoking weed in this hallway?" (Am. Compl. 2, 5–6, 9–10, 12–13.) After the questioning, "the defendants stayed conversating [sic] in the parking lot of the apartment complex . . . for at least 20 minutes." (Am. Compl. 9.) Willoughby asserts that he "informed the defendants of their unwelcomeness [sic] and racial profiling police behaviors," "had them write down their names on [his] notepad," and "made a verbal complaint . . . to a Henrico County Police Non-Emergency Dispatcher." (Am. Compl. 2, 6, 13.)

Willoughby claims that he "was treated differently than the caucasian [sic] residents of Henrico County would have been treated under the same circumstances and the unfair and unequal racial profiling treatment resulted from purposeful discrimination based solely on [his] African American skin color [sic]." (Am. Compl. 7, 13.) Willoughby further states that "[t]his was a non consensual [sic] encounter with defendants Ojibway, Bernacki, and . . . [the

---

[12] Willoughby also contends that the purpose of the questioning was "to coerce [Willoughby and C.P.] into admitting [their] role in an alleged crime and/or . . . to obtain information regarding an alleged event that the defendants believed [Willoughby and C.P.] witnessed." (Am. Compl. 9.)

7

Commonwealth, and] that [neither he nor C.P.] felt [they] had the option of declining the officer's request for information." (Am. Compl. 10.)

Willoughby alleges that, in the June 30, 2016 interaction, Bernacki, Ojibway, and the Commonwealth "intentionally demonstrated a pattern of racial profiling police harassment behaviors" towards him. (Am. Compl. 6.) Specifically, Ojibway and the Commonwealth "were intentionally negligent when they racially profiled" him, and Bernacki "was intentionally negligent when he allowed and permitted [Ojibway and the Commonwealth] to racially profile" him. (*Id.*)

According to Willoughby, as a result of the Defendants' actions, he "suffered actual, compensational and pain and suffering damages [sic]." (Am. Compl. 3, 7, 10, 13.) Specifically, Willoughby claims his "Schizoaffective disorder [has] come out of remission" and his "paranoia and sadness caused [Willoughby's] doctor" to increase the dose of one of Willoughby's medications and prescribe "antipsychotic medication."[13] (*Id.*) Willoughby is also "seeing a counselor for this Schizoaffective Disorder. (Am. Compl. 3.) Willoughby states that "actual damages and pain and suffering are to be determined." (Am. Compl. 3, 7, 10, 13.) On all counts, Willoughby seeks: (1) past and future medical expenses; (2) pain and suffering; (3) fees and interest; (4) injunctive relief; and, (5) damages.

### III. Analysis

Because "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679, the Court will rely only on Willoughby's well-pleaded *factual* allegations in examining whether his Amended Complaint states a claim for each

---

[13] Willoughby intersperses allegations regarding his mental disability throughout his Amended Complaint. Even under a liberal reading, these contentions would pertain to damages only. They do not rise to any allegation of a different constitutional violation apart from those analyzed in this Memorandum Opinion.

8

asserted cause of action. Under this well-accepted standard, Willoughby does not allege facts that, taken as true, state a claim for an equal protection violation. The Court must therefore dismiss Counts I and IV, Willoughby's Equal Protection claims. Furthermore, Willoughby fails to allege facts sufficient to state either a Fourth Amendment Claim or a Virginia tort law claim. Thus, the Court must dismiss Counts II and III, Willoughby's Fourth Amendment and Tort claims.

### A. Willoughby Fails to State a Claim for an Equal Protection Violation

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he [or she] has been treated differently from others with whom he [or she] is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). The Amended Complaint contains no facts which, taken as true, would establish that Willoughby was treated differently—on either May 10, 2016, or June 30, 2016—from similarly situated others.

Willoughby fails to state a claim for an equal protection violation for at least three reasons. First, he identifies no so-called "comparator"—no individual with whom he is similarly situated but who was treated differently. Second, to the extent Willoughby intends that C.P. serve as the comparator, Willoughby alleges that both he and C.P. were subject to the *same* treatment, and Willoughby thus cannot support claim for an equal protection violation by using C.P. as the comparator.[14] Third, Willoughby pleads no facts that, even construed liberally, could support an inference that any unequal treatment stemmed from discrimination.

---

[14] Willoughby never alleges C.P.'s race. However, because Willoughby alleges that he and C.P. were subject to the same treatment, C.P. could not serve as the comparator for

First, Willoughby pleads no facts identifying an individual with whom he is similarly situated. Willoughby's sole allegation that he was treated differently than similarly situated individuals is that he was treated differently than "the caucasian [sic] residents of Henrico County would have been treated under the same circumstances." (Am. Compl. 7, 13.) That assertion, however, is a conclusory allegation not entitled to the presumption of truth and not sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679.

Second, Willoughby cannot state a claim for an equal protection violation by using C.P. as the comparator. C.P. is the only other individual Willoughby references in the Amended Complaint, other than the defendants. However, according to Willoughby, C.P. was subjected to the same questioning as Willoughby—the questioning that Willoughby alleges was "unfair and unequal racial profiling treatment result[ing] from purposeful discrimination based solely on [Willoughby's] African American skin color." (Am. Compl. 13; *see also* Am. Compl. 9–10.) Thus, to the extent Willoughby intends C.P. to serve as the comparator for his Equal Protection claim, Willoughby alleges no facts supporting the inference that he was "treated *differently* from others." *Morrison*, 239 F.3d at 654 (emphasis added).

Finally, because Willoughby pleads no facts identifying anyone treated differently, Willoughby fails to allege that "the unequal treatment was the result of intentional or purposeful discrimination." *Morrison*, 239 F.3d at 654. The Court must dismiss Counts I and IV of the Amended Complaint.[15]

---

Willoughby's Equal Protection claim regardless of C.P.'s race because C.P. is not an individual from whom Willoughby "has been treated differently." *See Morrison*, 239 F.3d at 654.

[15] Willoughby's Amended Complaint also fails to state a claim for an equal protection violation for the events of May 10, 2016. Although he asserts that May 10, 2016 "was the first case of unwelcomeness [sic] and racial profiling police harassment behaviors from the Henrico

## B. Willoughby Fails to State a Claim for a Fourth Amendment Violation

The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs "[o]nly when [a police] officer, by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.17 (1968). "As a general matter, law enforcement officers do not effectuate a detention or seizure 'merely by approaching individuals on the street or in other public places and putting questions to them.'" *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). In determining "'whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'" *Jones*, 678 F.3d at 299 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). The relevant circumstances a court considers in making this determination include, but are not limited to:

> the number of police officers present during the encounter, whether they were in uniform or displayed their weapons, whether they touched the defendant, whether they attempted to block his departure or restrain his movement, whether the officers' questioning was non-threatening, and whether they treated the defendant as though they suspected him of illegal activity rather than treating the encounter as routine in nature.

*Id.* at 300 (internal quotation marks omitted).

Willoughby's Amended Complaint fails to state a claim of an unreasonable search and seizure because the alleged *facts*, even viewed in the light most favorable to Willoughby, do not show that the officers either searched or seized Willoughby. Willoughby alleges that on June 30,

---

County Police Department," (Am. Compl. 1, 12), he includes no factual allegations about similarly situated individuals on that day or during that incident.

2016, "Defendants Ojibway and . . . [the Commonwealth] illegally seized the plaintiff on his back porch, while defendant, J.D. Bernacki, illegally seized an underage male roommate, C.P., in the front of the dwelling through an open living room window."[16] (Am. Compl. 9.) Willoughby elaborates, that this "seizure" consisted of Ojibway and Bernacki "in the front dwelling through an open living room window[,] . . . hail[ing] questions at us, and . . . trying to coerce us into admitting our role in an alleged crime." (*Id.*) Although Willoughby asserts that "Ojibway and Commonwealth of Virginia illegally seized [Willoughby] on his back porch," (*id.*), Willoughby never avers *facts* indicating any non-consensual encounter between himself and either police officer.

An officer questioning Willoughby on his back porch and another questioning C.P. through an open living room window does not constitute a seizure. Willoughby does not allege facts suggesting that a reasonable person would not be free to leave the porch and go inside, ending the questioning. Nor does he aver that the front window could not be closed, ending the questioning in that way. The non-threatening nature of the questions asked by the officers as set forth in the Amended Complaint also cuts against Willoughby's claim of a non-consensual encounter.[17] Willoughby alleges no facts indicating that Bernacki or Ojibway prevented Willoughby from declining to answer their questions or refusing to engage in any conversation. Further, as alleged in the Amended Complaint, only two police officers were present, neither officer displayed his weapons, and neither officer touched Willoughby or attempted to block or

---

[16] Of course, Willoughby's allegation that he was "illegally seized" constitutes a mere legal conclusion not entitled to the presumption of truth and not sufficient to survive a motion to dismiss under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 679.

[17] The questions included, "[W]hy don't you have any light bulb at your back door?"; "[W]ho owns this apartment?"; "[Y]ou smell weed around here?"; "[A]re you a big husler [sic] like your T-Shirt says?"; and, "[D]id you see anyone smoking weed in this hallway?" (Am. Compl. 2, 5–6, 9–10, 12–13.)

restrain Willoughby's movement.[18] *See Jones*, 678 F.3d at 300. The facts as alleged and viewed in the light most favorable to Willoughby describe a consensual encounter, not one that "would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.'" *Jones*, 678 F.3d at 299 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)).

The Court must dismiss Count III of the Amended Complaint.

### C.     Willoughby Fails to State a Claim under Virginia Tort Law

Willoughby pleads no specific tort allegedly committed by any defendants, nor does he identify a cognizable legal duty, breach of duty, or state a plausible negligence claim. Willoughby's Amended Complaint merely avers "intentionally negligent" actions by the Officers and the Commonwealth. Intentional negligence, however, is not a recognized tort claim, nor does Willoughby plead any additional facts that could held the Court decipher the origins of his so-called "intentional[] negligen[ce]" claim.

Construing Willoughby's *pro se* Amended Complaint liberally, as the Court must, Willoughby could be asserting a gross negligence claim based on the June 30, 2016 interaction with Bernacki and Ojibway. During that interaction, according to Willoughby, the Defendants "intentionally demonstrated a pattern of racial profiling police harassment behaviors" towards him. (Am. Compl. 6.) Specifically, Ojibway and the Commonwealth "were intentionally negligent when they racially profiled" him, and Bernacki "was intentionally negligent when he

---

[18] Willoughby also contends that the officers "stayed conversating [sic] in the parking lot of the apartment complex" for approximately 20 minutes after questioning Willoughby. (Am. Compl. 9.) Willoughby then "grabbed [his] notepad and walked a half of a block to the defendants['] vehicle and requested that they write their names down." (Am. Compl. 9.) This encounter likewise does not amount to a Fourth Amendment violation because Willoughby alleges no facts indicating that it was non-consensual—to the contrary, Willoughby initiated this interaction.

allowed and permitted [Ojibway and the Commonwealth] to racially profile" him. (*Id.*) These allegations do not state a claim under Virginia tort law.

Virginia tort law likely does not recognize a claim for gross negligence in police investigations. *Safar v. Tingle*, 859 F. 3d 241, 251 (4th Cir. 2017) (recognizing that "[i]t may be that Virginia does not recognize a claim for gross negligence," but stating that "the definition of legal duties under the law of tort is best left for the state courts to resolve"). However, even if such a claim existed under Virginia law, Willoughby pleads no facts that could state such a claim. Willoughby's assertions that the Officers and the Commonwealth "intentionally demonstrated a pattern of racial profiling police harassment behaviors" towards him, and "were intentionally negligent when they racially profiled" him, (Am. Compl. 6), amount merely to conclusory allegations that are insufficient to survive a motion to dismiss under rule 12(b)(6). *See Iqbal*, 556 U.S. at 679. Thus, the Court must dismiss Count II of the Amended Complaint.

## IV. Conclusion

For the foregoing reasons, the Court finds that Willoughby fails state an Equal Protection, Fourth Amendment, or Virginia tort law claim. The Court will grant the Officers' Motion to Dismiss and deny as moot the Commonwealth Motion to Dismiss. An appropriate Order shall issue.

It is so ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/20/2017